# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2011-NMSC-007

Filing Date: February 4, 2011

Docket No. 32,001

DUSTIN OLDHAM,

        Petitioner-Respondent,

v.

GLENDA OLDHAM,

        Respondent-Petitioner.

**ORIGINAL PROCEEDING ON CERTIORARI**
**William F. Lang, District Judge**

Luebben Johnson & Barnhouse LLP
Karl E. Johnson
Randolph H. Barnhouse
Samuel D. Hough
Albuquerque, NM

for Petitioner

Geer, Wissel & Levy P.A.
Maria Garcia Geer
Robert D. Levy
Elizabeth Drotning Hartwell
Albuquerque, NM

for Respondent

## OPINION

**DANIELS, Chief Justice.**

**{1}** This case requires us to interpret and harmonize potentially conflicting provisions within our domestic relations, probate, and trust statutes to determine the process through which a decedent's estate is defined and distributed when one party to a pending divorce

1

proceeding dies before a final divorce decree is entered. Under these circumstances, a provision within New Mexico's domestic relations code, NMSA 1978, Section 40-4-20(B) (1993), requires the domestic relations court to continue the proceedings in order to determine marital property rights and debts, spousal and child support, and paternity "as if both parties had survived." We are asked to determine whether a marital property judgment entered under Section 40-4-20(B) can statutorily revoke a decedent's will or trust. We hold as a matter of law that the decedent's will and trust are not statutorily revoked by the entry of a Section 40-4-20(B) marital property judgment. We also hold that, before the domestic relations proceedings can be continued, a personal representative who is not disqualified by a conflict of interest must be appointed to represent the decedent's estate through the conclusion of those proceedings. After the domestic relations court concludes the Section 40-4-20(B) proceedings, the decedent's estate can be distributed according to the decedent's estate plan and our governing probate statutes.

## I. FACTUAL BACKGROUND

**{2}** The relevant facts are undisputed. David Oldham (Husband) died on May 7, 2007, nearly four years after being diagnosed with brain cancer. At the time of his death, Husband was married to Glenda Oldham, and the married couple had one adult child, Dustin Oldham (Son).

**{3}** On March 29, 2004, Husband and Wife jointly executed the David M. Oldham and Glenda Oldham Revocable Trust Agreement (Trust), naming themselves as co-trustees. Under the terms of the Trust, "[e]ach Settlor individually reserve[d] the right and power . . . without the consent of any other person . . . to revoke or terminate [the Trust] as it affects his or her separate and community property by a duly executed instrument . . . signed by such Settlor . . . and delivered to the Trustee (if other than such Settlor)." Although Husband and Wife each reserved the right to revoke his or her share of the Trust during his or her lifetime, the Trust provided that, "[u]pon the death of the first Settlor," that Settlor's share of the Trust property "shall be irrevocable."

**{4}** On the same day Husband and Wife executed the Trust, Husband executed the Last Will and Testament of David M. Oldham (Will). The Will nominated Wife as Husband's personal representative and gave Husband's entire estate, with the exception of his tangible personal property, "to be administered as part of [the] Trust." The parties agree that both the Will and the Trust were validly executed and that neither was amended nor revoked prior to Husband's death.

## II. PROCEDURAL HISTORY

**{5}** In February 2007, a divorce petition was filed on Husband's behalf in the Second Judicial District Court of New Mexico. Wife filed a timely motion to dismiss the petition, alleging that Husband was not competent to file for divorce and that he was coerced to do so by relatives. Whether Husband was competent when he filed for divorce remains a

contested issue,[1] and no final divorce decree has been entered. The domestic relations proceedings are not before this Court and have been stayed pending this appeal.

**{6}** After Husband's death, Son filed an application in the probate court for informal appointment as personal representative of Husband's estate. Son's position is that, under New Mexico law, a property division judgment entered pursuant to Section 40-4-20(B) will revoke Husband's Will and Husband's share of the Trust, rendering Husband intestate. Wife filed a counter-application for formal appointment to serve as personal representative of Husband's estate in the Second Judicial District Court, arguing that she has priority to serve because Husband nominated her in the Will. Wife then moved for partial summary judgment, seeking (1) appointment as personal representative of Husband's estate, (2) affirmation that the Will and Trust were valid, and (3) admission of the Will to probate. Son filed a countermotion for summary judgment seeking appointment as personal representative and invalidation of the Will and Trust.

**{7}** The district court concluded as a matter of law that "[o]nly a final decree of divorce, and not the mere filing and service of a divorce petition, is sufficient to revoke a governing instrument, including the Will and Trust." The court therefore granted Wife's motion for partial summary judgment. The court's final order declared the Will and Trust to be unrevoked and fully enforceable, admitted Husband's Will to probate, and appointed Wife as the personal representative of Husband's estate.

**{8}** Son appealed the district court's decision to the Court of Appeals. *Oldham v. Oldham*, 2009-NMCA-126, 147 N.M. 329, 222 P.3d 701. The Court of Appeals reversed the district court on the issue of Wife's appointment as personal representative due to the conflict that would be present if Wife represented Husband's estate against herself in the domestic relations proceedings. *Id.* ¶ 2. The Court of Appeals also reversed the summary judgment determination that the Will and Trust were unrevoked and remanded for further proceedings on both issues. *Id.*

**{9}** We granted Wife's petition for certiorari to address two issues: (1) whether a final judgment distributing marital property pursuant to Section 40-4-20(B) revokes the governing estate planning instruments of the deceased party when the deceased party dies during the pendency of the divorce proceedings, and (2) whether an inherent conflict of interest disqualifies Wife from serving as the personal representative of Husband's estate. We hold that the entry of a Section 40-4-20(B) marital property judgment cannot statutorily revoke a decedent's estate planning instruments. We also hold that Wife is disqualified by a conflict of interest from serving as the personal representative of Husband's estate during the

---

[1]Husband was evaluated on August 28, 2006, and twice thereafter by neuropsychologist Anne E. Kayl, Ph.D., to determine the effects of his disease and treatment on his cognitive function. Dr. Kayl concluded that Husband's intellectual function, memory, language, and other cognitive functions were significantly impaired.

3

remainder of the domestic relations proceedings.

## III. DISCUSSION

### A. Standard of Review

**{10}** This is a case of statutory interpretation. "Statutory construction is a matter of law we review de novo." *State v. Nick R.*, 2009-NMSC-050, ¶ 11, 147 N.M. 182, 218 P.3d 868. "In construing a statute, our charge is to determine and give effect to the Legislature's intent. In discerning the Legislature's intent, we are aided by classic canons of statutory construction, and [w]e look first to the plain language of the statute, giving the words their ordinary meaning, unless the Legislature indicates a different one was intended." *Marbob Energy Corp. v. N.M. Oil Conservation Comm'n*, 2009-NMSC-013, ¶ 9, 146 N.M. 24, 206 P.3d 135 (alteration in original) (internal quotation marks and citation omitted). "We must take care to avoid adoption of a construction that would render the statute's application absurd or unreasonable or lead to injustice or contradiction." *Nick R.*, 2009-NMSC-050, ¶ 11 (internal quotation marks and citation omitted).

**{11}** To resolve this case we must read Section 40-4-20(B) together with the Uniform Probate Code (UPC), NMSA 1978, Sections 45-1-101 to -9A-13 (1975, as amended through 2009), and the Uniform Trust Code (UTC), NMSA 1978, Sections 46A-1-101 to -11-1105 (2003, as amended through 2009). "[A] statutory subsection may not be considered in a vacuum, but must be considered in reference to the statute as a whole and in reference to statutes dealing with the same general subject matter." *State v. Smith*, 2004-NMSC-032, ¶ 10, 136 N.M. 372, 98 P.3d 1022 (alteration in original) (internal quotation marks and citation omitted). "[S]tatutes covering the same subject matter should be harmonized and construed together when possible in a way that facilitates their operation and the achievement of their goals." *State ex rel. Quintana v. Schnedar*, 115 N.M. 573, 575-76, 855 P.2d 562, 564-65 (1993) (citations omitted).

### B. A Marital Property Judgment Entered Pursuant to Section 40-4-20(B) Cannot Statutorily Revoke a Will or a Trust.

*1. Section 40-4-20(B) Provides That Property Division Issues Must Still Be Addressed After the Death of a Party to a Divorce Action.*

**{12}** At issue in this case is the application of Section 40-4-20(B) of our domestic relations code, which directly addresses the division of marital property in cases where one party to a pending divorce action dies. Section 40-4-20(B) provides in relevant part that, upon the filing and service of a petition for divorce,

> if a party to the action dies during the pendency of the action, but prior to the entry of a decree granting dissolution of marriage, . . . the proceedings for the determination, division and distribution of marital property rights and debts,

4

distribution of spousal or child support or determination of paternity shall not abate. The court shall conclude the proceedings as if both parties had survived.

**{13}** By enacting Section 40-4-20(B), the Legislature departed from the common law rule that a pending divorce action abates when a party to the action dies before the entry of a final divorce decree. *See Karpien v. Karpien*, 2009-NMCA-043, ¶¶ 5-7, 146 N.M. 188, 207 P.3d 1165 (discussing the history and language of Section 40-4-20(B)).

**{14}** Section 40-4-20(B) applies in this case and requires the domestic relations court to finish dividing Husband's and Wife's marital property rights and debts. In light of Section 40-4-20(B)'s mandate, we first address the issue of whether a Section 40-4-20(B) property judgment can revoke Husband's Will and Trust. Son contends that Husband's Will and Trust can be revoked posthumously through the application of Section 40-4-20(B) in conjunction with the UPC. The Court of Appeals agreed. *Oldham*, 2009-NMCA-126, ¶¶ 11-13. We conclude that a different outcome is required by the plain language of the UPC, this Court's precedent, and the strict statutory formalities required to validly revoke wills and trusts in New Mexico. We hold that a marital property judgment entered under Section 40-4-20(B) cannot revoke a decedent's governing estate planning instruments.

*2. Wills and Trusts Can Be Revoked Only Through Strict Compliance with the Statutory Formalities Established By New Mexico Law.*

**{15}** Revocation of wills and trusts is governed by mandatory statutes. We must honor legislative intent that wills and trusts be revoked in strict accordance with the statutory methods and formalities established by the UPC and UTC. *See Gushwa v. Hunt* (*In re Estate of Gushwa*), 2008-NMSC-064, ¶ 15, 145 N.M. 286, 197 P.3d 1 (explaining that the legislature has intentionally and specifically limited the available means of revocation); *see also Albuquerque Nat'l Bank v. Johnson*, 74 N.M. 69, 71, 390 P.2d 657, 658 (1964) ("[W]here the subject of revocation is regulated by statute a will may be revoked only in the manner described by the statute."). When construing the UPC and UTC provisions governing revocation, we take an approach that promotes the statutes' underlying purposes and policies. *See* §§ 45-1-102(A), 46A-1-112. A primary purpose of both the UPC and the UTC is "to discover and make effective the intent of a decedent in distribution of his property." Section 45-1-102(B)(2); *see also Cable v. Wells Fargo Bank N.M., N.A.* (*In re Cable Family Trust*), 2010-NMSC-017, ¶ 12, 148 N.M.127, 231 P.3d 108 (explaining that the UTC regards the terms of the trust as the manifestation of the settlor's intent).

**{16}** At early common law, before the advent of statutes governing the revocation of wills, attempts to defeat valid wills were common. 2 *Page on the Law of Wills* § 21.3, at 352 (2003) ("The recognition of informal revocation by oral declarations . . . natural[ly] result[ed] in bold attempts to defeat wills by fabricating evidence of the declarations of [the] testator."). These abuses led to the enactment of revocation statutes in England and, subsequently, most states, including New Mexico. *Albuquerque Nat'l Bank*, 74 N.M. at 71,

5

390 P.2d at 658-59.  Requiring strict adherence to the formalities established by revocation statutes protects decedents, who are unavailable to defend their estate plans against fraud.  *See Gushwa*, 2008-NMSC-064, ¶¶ 29-30.

**{17}**    The UPC provides the exclusive means by which a will can be revoked.  *See Sanchez v. Martinez* (*In re Estate of Jose C. Martinez*), 1999-NMCA-093, ¶ 9, 127 N.M. 650, 985 P.2d 1230.  "The power of a testator to revoke is of equal stature and importance as the power to make a will in the first place, and one of the inherent characteristics of a will is its revocability."  2 *Page on the Law of Wills*, *supra*, § 21.1, at 345-46.  A testator can revoke a will or any part thereof "by executing a subsequent will." Section 45-2-507(A)(1).  A will can also be revoked by "performing a revocatory act on the will," including "burning, tearing, canceling, obliterating or destroying the will or any part of it" with the intent to revoke the will.  Section 45-2-507(A)(2).  In this case, it is undisputed that Husband neither executed a subsequent will nor performed a revocatory act on his existing Will.

**{18}**    Trust revocation is governed by the UTC.  The terms of the trust instrument determine whether a trust is revocable.  *See* § 46A-6-602.  A settlor can revoke or amend a revocable trust by complying with a method of revocation "provided in the terms of the trust."  Section 46A-6-602(C)(1).  Additionally, if a trust does not expressly establish the exclusive means by which it can be revoked, the settlor can revoke that trust by executing "a later will or codicil that expressly refers to the trust or specifically devises property that would otherwise have passed according to the terms of the trust," or by "any other method manifesting clear and convincing evidence of the settlor's intent."  Section 46A-6-602(C)(2).  The Trust in this case provided a method of revocation.  Husband and Wife each reserved the power to revoke their shares of the Trust by simply signing a "duly executed instrument" and delivering that instrument to the trustee.  Husband did not execute either an instrument revoking the Trust, pursuant to the language of the Trust, or a later will that would have revoked the Trust, pursuant to Section 46A-6-602(C)(2)(a).

**{19}**    Son argues that Husband's filing and service of a divorce petition "constitutes clear and convincing evidence of his intent to revoke his trust" and that the Trust was therefore revoked pursuant to Section 46A-6-602(C)(2)(b).  It is doubtful that the mere filing and service of a divorce petition could constitute "clear and convincing evidence" of a settlor's intent to revoke a trust.  Less formal methods of trust revocation are usually insufficient means to revoke a trust, "because they provide less reliable indicia of intent" than those methods outlined in either the terms of the trust or in the statutory language of the UTC.  *See* Unif. Trust Code § 602 cmt. (amended 2003), 7C U.L.A. 549 (2006).

**{20}**    We need not reach this issue, however, because it was not preserved below.  Son does not indicate in his brief, and in our review of the record we have not located, where Son argued to the district court that filing and service of a divorce petition was clear and convincing evidence of Husband's intent to revoke the Trust.  Son neither established that he preserved this argument nor presented any legal authority supporting his claim.  "[T]his Court will not review issues raised in appellate briefs that are unsupported by cited

authority." *State v. Clifford*, 117 N.M. 508, 513, 873 P.2d 254, 259 (1994). "Mere reference in a conclusory statement will not suffice and is in violation of our rules of appellate procedure." *Id.*; *see* Rule 12-213(A)(4) NMRA (providing that briefs "shall contain . . . a statement explaining how the issue was preserved in the court below, with citations to authorities, record proper, transcript of proceedings or exhibits relied on"). Accordingly, we decline to review whether Husband's filing of a divorce petition manifested clear and convincing evidence of his intent to revoke the Trust in satisfaction of Section 46A-6-602(C)(2)(b).

*3. Section 45-2-804 Cannot Statutorily Revoke Husband's Will or Trust.*

**{21}** Son argues in the alternative that a marital property judgment entered under Section 40-4-20(B) will act to revoke Husband's Will and Trust posthumously. Son relies on Section 45-2-804 of the UPC, which provides for "[r]evocation of probate and nonprobate transfers by divorce." Under Section 45-2-804(B)(1), the "divorce or annulment of a marriage . . . revokes any revocable . . . disposition or appointment of property" to the decedent's former spouse made in a "governing instrument," such as a will or a trust, and revokes as well the decedent's nomination of the "former spouse to serve in any fiduciary or representative capacity," such as personal representative or trustee. *See* § 45-1-201(A)(17) (defining "governing instrument" to include wills and trusts). We disagree with Son's proposed interpretation of Section 45-2-804 for several reasons.

**{22}** First, we conclude that Section 45-2-804 is not applicable in this case because it provides a statutory mechanism for the revocation of *revocable* governing instruments, and Husband's Will and Trust both became *irrevocable* when he died. "From the time of execution, a will is inherently revocable throughout the testator's remaining lifetime." Restatement (Third) of Prop.: Wills & Other Donative Transfers § 4.1 cmt. a (1999). When the testator dies, the will becomes irrevocable. *See Martinez v. Martinez* (*In re Estate of Miguel Martinez*), 99 N.M. 809, 813, 664 P.2d 1007, 1011 (Ct. App. 1983). Husband's Will became effective and irrevocable upon his death.

**{23}** Husband's share of the Trust property is also irrevocable. Whether or not a trust is revocable depends on the terms of the trust. Section 46A-6-602. The Trust in this case provided that, upon the death of the first settlor, that settlor's share of the Trust would become irrevocable. Husband's share of the Trust property became irrevocable upon his death in accordance with his intent as expressed by the terms of the Trust. *See Cable*, 2010-NMSC-017, ¶ 13 (explaining that the plain language of a trust is "the primary evidence of grantor intent"). Neither the Will nor the Trust can be revoked through the "by divorce" provisions of Section 45-2-804.

**{24}** Applying Section 45-2-804 (revocation by divorce or annulment) to revoke governing instruments after the entry of a Section 40-4-20(B) marital property judgment would improperly give the domestic relations court jurisdiction to grant the equivalent of a posthumous divorce. The general rule in New Mexico and virtually every other jurisdiction

7

is that a pending divorce action becomes moot when one party to the action dies. *See Romine v. Romine*, 100 N.M. 403, 404, 671 P.2d 651, 652 (1983) ("[N]o power can dissolve a marriage which has already been dissolved by act of God." (quoting *Bell v. Bell*, 181 U.S. 175, 178 (1901))); *see also* 24 Am. Jur. 2d *Divorce & Separation* § 118 (2008) (noting that judicial power ends when a party dies before the entry of the divorce decree). In *Romine*, this Court explained that one spouse's death during the pendency of a divorce action deprives the court of jurisdiction to enter a final divorce decree. 100 N.M. at 404, 671 P.2d at 652.

**{25}** In 1993, the Legislature enacted Section 40-4-20(B), expressly providing the domestic relations court jurisdiction to conclude three specific tasks if a party to a divorce dies during its pendency: "division and distribution of marital property rights and debts, distribution of spousal or child support[, and] determination of paternity." Notably, Section 40-4-20(B) omits "divorce" from the list of ancillary domestic relations proceedings that must be continued and concluded after the death of one party to a pending divorce action. Nothing in Section 40-4-20(B) gives the court jurisdiction to enter a posthumous divorce decree. *Cf. Taper v. Taper*, 939 A.2d 969, 972-73 (Pa. Super. Ct. 2007) (holding that a Pennsylvania domestic relations statute providing for posthumous property division did not provide the court with jurisdiction to enter a posthumous divorce). The Legislature did not intend for Section 40-4-20(B) to reverse the longstanding rule that death terminates the marital relationship.

**{26}** Son argues that a Section 40-4-20(B) marital property judgment meets the definition of "divorce or annulment" in Section 45-2-804 (providing for revocation by divorce or annulment), and that the entry of a Section 40-4-20(B) marital property judgment therefore will statutorily revoke Husband's Will and Trust.

**{27}** Son construes the statutes as follows. Section 45-2-804(A)(2) defines "divorce or annulment" as "any divorce or annulment or any dissolution or declaration of invalidity of a marriage that would exclude the spouse as a surviving spouse within the meaning of Section 45-2-802." Section 45-2-802 is a definitional statute that explains the meaning of the phrase, "surviving spouse," as used in numerous other UPC provisions. Section 45-2-802(B)(3) excludes as a surviving spouse "an individual who was a party to a valid proceeding concluded by an order purporting to terminate all marital property rights, including a property division judgment entered pursuant to the provisions of Section 40-4-20[B]." Under Son's construction of the statutes, if a marital property judgment is entered in this case pursuant to Section 40-4-20(B), Wife will not be a surviving spouse under Section 45-2-802(B)(3), and therefore the marriage will result in a "divorce or annulment" under Section 45-2-804, which will statutorily revoke Husband's governing instruments.

**{28}** Son's reading of Section 45-2-802 (defining "surviving spouse") misapplies that provision. Subsection B, upon which Son relies, provides a definition of "surviving spouse" that applies only "[f]or purposes of Chapter 45, Article 2, Parts 1 through 4 and Section 45-3-203." Section 45-2-802(B). The statute governing revocation by divorce or annulment,

8

Section 45-2-802, is found in Chapter 45, Article 2, Part 8, and therefore is not one of the enumerated provisions to which Section 45-2-802(B)'s definition of "surviving spouse" applies. Son's construction of the statutes is contrary to the plain language of Section 45-2-802(B), which expressly limits its own applicability. *See State ex rel. Clark v. Johnson*, 120 N.M. 562, 576 n.6, 904 P.2d 11, 25 n.6 (1995) (concluding that the Legislature did not intend for the governor to be a "public agency" within the meaning of a statute where the statute specifically listed the entities that qualified as a public agency but did not list the governor).

**{29}** To support his argument, Son contends that *Karpien*, 2009-NMCA-043, presented a situation nearly identical to this case. In *Karpien*, the wife died intestate while she was a party to a pending divorce action. *Id.* ¶¶ 1, 3-4. The domestic relations court complied with Section 40-4-20(B)'s mandate by concluding the proceedings for the division of marital property. *Karpien*, 2009-NMCA-043, ¶¶ 1, 10. The husband argued before the Court of Appeals that he was "entitled to receive all of [his wife's] community property by intestacy" and that "the district court should have distributed the marital estate under Section 45-2-102 of the Probate Code." *Id.* ¶ 4; *see also* § 45-2-102(B) (intestacy statute). The Court of Appeals disagreed, explaining that the domestic relations court must apply our community property law "'as if both parties had survived'" when concluding a property division pursuant to Section 40-4-20(B). *Karpien*, 2009-NMCA-043, ¶ 9 (quoting § 40-4-20(B)); *see also* Community Property Act of 1973, NMSA 1978, §§ 40-3-6 to -17 (1973, as amended through 1997) (defining and classifying community property). The Court of Appeals then explained that the husband was not a "surviving spouse" for purposes of our law governing intestate succession, citing Section 45-2-802(B)(3), which expressly applies to Chapter 45, Article 2, Part 1 (governing intestacy). *Karpien*, 2009-NMCA-043, ¶ 10. The Court of Appeals correctly held that the Section 40-4-20(B) marital property judgment precluded husband "from being considered a 'surviving spouse' for purposes of" intestate succession. *Karpien*, 2009-NMCA-043, ¶ 10. *Karpien* illustrates how the controlling effect of Section 40-4-20(B) gives different results depending on whether a party to a pending divorce action dies with or without governing instruments. This case is distinguishable from *Karpien* because Husband did not die intestate but instead had governing instruments.

**{30}** Wills and trusts allow decedents to pass property in accordance with their own "personal wishes and tailor-made formula[s]" as expressed during their lifetimes "in accordance with the formalities prescribed by law." 1 *Page on the Law of Wills*, *supra*, § 1.1, at 1; *see also Cable*, 2010-NMSC-017, ¶ 11 ("[I]n construing the provisions of wills and trust instruments, the court must attempt to ascertain and give effect to the [grantor's] intent." (second alteration in original) (internal quotation marks and citation omitted)). Statutes governing the exclusive means of revocation were enacted to prevent fraud and protect the decedent's intended estate plan. *See Albuquerque Nat'l Bank*, 74 N.M. at 71-72, 390 P.2d at 659. Given the statutory formalities that must be complied with to validly revoke a will or trust, we cannot accept Son's proposed construction of the statutes. We find nothing in our statutory scheme indicating that the Legislature intended for marital property judgments entered pursuant to Section 40-4-20(B) to revoke the decedent's governing

instruments posthumously. Neither divorce nor revocation by divorce is possible after the death of one spouse. We hold that a marital property judgment entered pursuant to Section 40-4-20(B) will not revoke Husband's Will or Trust.

**D. The Domestic Relations Proceedings Must Be Concluded Pursuant to Section 40-4-20(B) *Before* Husband's Estate Can Be Probated.**

**{31}** We clarify the procedural sequence that must be followed in cases where one party to a pending divorce action dies before the entry of a final divorce decree. Wife argues that the probate proceedings must be completed before the domestic relations court concludes the proceedings for the division of marital property. We disagree. In cases where one party to a pending divorce action dies before the divorce is finalized, distributing the decedent's estate under the decedent's estate plan and the UPC without first establishing the decedent's share of the marital property and debts would be unworkable and contrary to legislative intent. We hold that the deceased's estate must be defined through the entry of a Section 40-4-20(B) marital property judgment before that estate can be distributed in probate.

**{32}** Concluding a Section 40-4-20(B) property division is mandatory. Section 40-4-20(B) provides in relevant part that the domestic relations court "*shall* conclude the proceedings" for "determination, division and distribution of marital property rights and debts . . . as if both parties had survived." (Emphasis added.) Section 40-4-20(B)'s use of the word *shall* indicates that the Legislature intended for the decedent's estate to be defined by the domestic relations court. *See* NMSA 1978, § 12-2A-4 (1997) ("'Shall' and 'must' express a duty, obligation, requirement or condition precedent."); *Marbob Energy Corp.*, 2009-NMSC-013, ¶ 22 (explaining that "'shall' indicates that the provision is mandatory"). Allowing the probate court to distribute the decedent's estate without first concluding the domestic relations proceedings would contravene Section 40-4-20(B)'s mandate. *See Karpien*, 2009-NMCA-043, ¶ 11 (explaining that dividing the wife's estate using our intestacy laws instead of our community property laws would "effectively repeal the provisions of Section 40-4-20(B))."

**{33}** Wife argues that the probate proceedings must be concluded before the domestic relations proceedings in order to comply with Section 40-4-20(B)'s child and spousal support provisions. Section 40-4-20(B) provides that, when determining support, "the court shall . . . consider the amount and nature of the property passing from the [decedent] to the person for whom the support would be paid, whether by will or otherwise." Although we agree with Wife that this provision requires the domestic relations court to consider the decedent's estate plan before awarding any child or spousal support, it is important to have a procedural sequence that will work in all cases and comply with all governing statutes.

**{34}** When a party to a pending divorce action dies before a final divorce decree is entered, the decedent's estate cannot be immediately distributed in probate because the extent of the property owned by the decedent is unknown. For example, if a party to a pending divorce dies intestate, the domestic relations court must determine the extent of the

10

decedent's separate property and share of the community property in order to determine what property will pass by intestacy. If a party to a pending divorce dies with a valid will, the domestic relations proceeding must first determine the property over which the decedent can exercise the power of testamentary disposition. If a decedent's will has a residuary clause or pour-over provision, the domestic relations proceeding must determine what property will pass via that residuary clause or pour-over provision. The domestic relations proceedings must therefore be completed first.

**{35}** This holding honors the requirements of governing statutes and provides a workable framework for the definition and distribution of the estates of all persons who die during the pendency of a divorce action in New Mexico. The single procedural sequence we outline effectuates the Legislature's intent that the Section 40-4-20(B) proceedings be concluded "as if both parties had survived," and it furthers the purposes and policies of the UPC by simplifying and clarifying estate law and "promot[ing] a speedy and efficient system" for settling decedents' estates. Section 45-1-102(B)(1), (3).

**E. Wife Cannot Be Appointed as the Personal Representative of Husband's Estate Before the Conclusion of the Domestic Relations Proceedings Because of an Inherent Conflict of Interest.**

**{36}** A personal representative must be appointed to represent the interests of Husband's estate during the conclusion of the domestic relations proceedings. *See* Rule 1-025(A)(1) NMRA ("If a party dies and the claim is not thereby extinguished, the court may order substitution of the proper parties."). Wife argues that, unless she is disqualified, her nomination in the Will gives her priority to serve as personal representative. We agree with the Court of Appeals that Wife is disqualified from serving during the conclusion of the proceeding to determine and distribute marital property rights and debts because Wife's interests are directly adverse to the interests of Husband's estate. *See Oldham*, 2009-NMCA-126, ¶ 2.

**{37}** Priority among persons seeking appointment as personal representative is governed by Section 45-3-203 as follows:

> A. Whether the proceedings are formal or informal, persons who are not disqualified have priority for appointment in the following order:
> (1) the person with priority as determined by a probated will including a person nominated by a power conferred in a will;
> (2) the surviving spouse of the decedent who is a devisee of the decedent;
> (3) other devisees of the decedent;
> (4) the surviving spouse of the decedent;
> (5) other heirs of the decedent; and
> (6) on application or petition of an interested person other than a spouse, devisee or heir, any qualified person.

11

But the priorities in Section 45-3-203 apply only to "*persons who are not disqualified*" from serving. *Id.* (emphasis added). "Disqualified" individuals include "a person whom the court finds unsuitable in formal proceedings." Section 45-3-203(F)(2). The district court therefore must determine whether a person nominated by a will to serve as the personal representative of the decedent's estate is "unsuitable" to serve. Although a decedent's former spouse may be suitable to serve as the personal representative for the purposes of probating the decedent's estate, a decedent's former spouse is not suitable to serve as the personal representative of the decedent's estate in an adversarial proceeding where the estate of the former spouse is the opposing party.

{38} Divorce and marital property division proceedings are adversarial by their very nature, making it impossible for one spouse to adequately represent the interests of both parties in the domestic relations proceedings. For example, allowing one party to control both sides of a domestic relations proceeding would enable that party to move, unopposed, to dismiss the proceeding, as Wife seeks to do in this case. Wife argues that a marital property division is not needed in this case because Husband's entire estate must pass according to his unrevoked Will and Trust. Son contends that Husband owned additional assets at the time of his death that are not covered by the Will or the Trust. By enacting Section 40-4-20(B), the Legislature intended that such disputes be resolved by the domestic relations court. Dismissal would prevent the court from concluding the domestic relations proceeding under the Section 40-4-20(B) mandate. A representative who is unimpaired by a conflict of interest must therefore be appointed to represent Husband's estate through the conclusion of the domestic relations proceedings.

## III. CONCLUSION

{39} We affirm in part and reverse in part the opinion of the Court of Appeals, and we remand to the district court for further proceedings in accordance with this Opinion.

{40} **IT IS SO ORDERED.**

_____
**CHARLES W. DANIELS, Chief Justice**

**WE CONCUR:**

_____
**PATRICIO M. SERNA, Justice**

_____
**PETRA JIMENEZ MAES, Justice**

_____
**RICHARD C. BOSSON, Justice**

12

_____
**EDWARD L. CHÁVEZ, Justice**

**Topic Index for *Oldham v. Oldham*, Docket No. 32,001**

**DR**                 **DOMESTIC RELATIONS**
DR-DP          Division of Property

**ST**                 **STATUTES**
ST-CS          Conflicting Statutes
ST-IP           Interpretation
ST-LI           Legislative Intent
ST-RC          Rules of Construction

**WL**                 **WILLS, TRUSTS AND PROBATE**
WL-AE        Administration of Estate
WL-IV         Inter Vivos Trust
WL-PR        Personal Representative
WL-RV        Revocation
WL-TG        Trusts, General