This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**M. CHRISTINE MONTOYA, ROLAND M. CHEEKU, BETTY DELGADO, SYLVIA PEREZ, and SUSAN L. ABRUMS, and all others similarly situated,**

    Plaintiffs-Appellants,

v.                           **NO. 29,838**

**CITY OF ALBUQUERQUE,**

    Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Nan G. Nash, District Judge**

The Branch Law Firm
Turner W. Branch
Frank V. Balderrama
Paul D. Dominguez
Albuquerque, NM

for Appellants

City of Albuquerque
Robert M. White, Acting City Attorney

Michael I. Garcia, Assistant City Attorney
Albuquerque, NM

for Appellee

**MEMORANDUM OPINION**

**CASTILLO, Chief Judge.**

This is the second challenge to the City of Albuquerque's (Albuquerque) Safe Traffic Operations Program (STOP) to come before this court. *See Victor A. Titus & the Titus & Murphy Law Firm v. City of Albuquerque (Titus),* ___- NMCA-___, ¶ ___, ___ N.M. ___, ___ P.3d ___ (No. 29,461, March 9, 2011). Appellants brought suit as a class challenging the legality and constitutionality of STOP. Albuquerque responded by filing a motion for declaratory judgment asking the court to determine that STOP is a valid and lawful exercise of Albuquerque's authority as a home rule municipality. Appellants simultaneously filed a motion for summary judgment wherein they argued that STOP is prima facie invalid and requested the court to order Albuquerque to return "all monies collected under the illegal penalty scheme" to the class members. In a memorandum order, the court denied Appellant's motion for summary judgment and granted Albuquerque's motion for declaratory judgment. We affirm.

**BACKGROUND**

This matter was initiated by the Branch Law Firm after Turner W. Branch

received notice that he had purportedly committed a STOP violation. The factual allegations in the complaint filed in November 2006, include the following. Mr. Branch was informed that STOP equipment detected his vehicle traveling within Albuquerque in excess of the designated speed limit. A later communication alleged that Mr. Branch failed to respond to the notice of violation within the allowable period of time. As such, Mr. Branch incurred penalty fees bringing the total STOP fine to $600.00 and was instructed that failure to pay the fine could potentially result in the seizure of his vehicle.

The complaint was brought on behalf of Mr. Branch and "as a class action pursuant to Federal Rule of Civil Procedure 23, on behalf of all people who paid any funds to [Albuquerque] pursuant to [STOP]." The class was subsequently certified by the district court as "all parties who have received a civil citation pursuant to . . . [STOP]." We refer to the Appellants in this matter—Mr. Branch, the other parties specifically named, and the entire class—as the Class.

The Class filed two amended complaints naming additional specific parties and, in the last of those complaints, specified the relief requested. This included: a declaratory judgment finding that STOP is unconstitutional, inconsistent with, and preempted by varying state laws; and an injunction precluding Albuquerque from collecting STOP fines or seizing vehicles under the authority of STOP.

3

In June 2009, Albuquerque filed a motion for declaratory judgment and, roughly two hours later on the same day, the Class filed a motion for summary judgment. In its motion for declaratory judgment, Albuquerque asked the court to conclude that STOP is presumptively constitutional and a valid and lawful exercise of Albuquerque's authority as a home rule municipality to abate nuisances. The Class, in its summary judgment motion, asked the court to issue an order declaring STOP prima facie invalid, declaring that Albuquerque was prohibited from enacting STOP from its inception until July 1, 2008, when the New Mexico Legislature lawfully recognized the program and declaring that the Class is entitled to a refund of any monies collected under STOP.

In July 2009, the district court issued a memorandum order on the motions. The court reached the following conclusions: (1) STOP is a legislative enactment entitled to a presumption of constitutionality; (2) Albuquerque is entitled to use its nuisance abatement powers to address traffic control; (3) STOP is civil rather than criminal and the administrative review process established by STOP does no injury to an alleged violators due process rights. Accordingly, the court denied the Class's motion for summary judgment and granted Albuquerque's motion for declaratory judgment. The Class appeals.

**DISCUSSION**

On appeal, the Class makes varying arguments with the same common premise: that STOP is unconstitutional and/or inconsistent with New Mexico law and, therefore, invalid. We note at the outset of our discussion that the Class's arguments were either directly considered in *Titus* or are governed by the analysis in that case. Accordingly, we rely on our holding in *Titus*. Before we address each of the Class's arguments, we turn our attention to two preliminary matters.

First, the Class was instructed to address whether the district court's memorandum order is final and that it complied with this instruction. Albuquerque now concedes that the order was final. We agree. Second, at oral argument, we identified problems with the record that raise significant questions about the propriety of this appeal. We explain.

Since its enactment in 2005, the STOP ordinance has been amended on three occasions. We pointed this out at oral argument and noted that the version of the ordinance the Class submitted into the record proper—which appears beginning at page 345—included amendments through 2009. The Class's complaint was filed in November 2006 and attacked the ordinance as it was originally enacted in 2005. We informed the Class that we required clarification regarding which version of the statute controls and specifically asked whether the version of the ordinance submitted into the record was controlling. The Class confirmed that the version of the ordinance

beginning at record proper 345 governed. In light of the Class's response, we then asked whether the Class intended to challenge the forfeiture provisions of STOP and noted that those provisions are not part of the ordinance in the record. The Class responded that the forfeiture provisions were an issue in its lawsuit and that it did intend to address the forfeiture provisions on appeal.

We remain uncertain about which specific version of the ordinance the Class is challenging and what effect, if any, the varying amendments to STOP have here. The Class did not address these concerns even though they were raised at oral argument, and they continue to trouble us. *See Sonntag v. Shaw*, 2001-NMSC-015, ¶ 2, 130 N.M. 238, 22 P.3d 1188 (stating that our Supreme Court would not address a party's claim when the party failed to provide citations to relevant authority and failed to argue the issue with sufficient particularity). Nevertheless, because *Titus* controls the issues presented, we proceed to the Class's arguments.

We begin with the standard of review. "Interpretation of an ordinance is a matter of law subject to our de novo review using the same rules of construction applicable to statutes." *Kirkpatrick v. Bd. of Cnty. Comm'rs of Santa Fe Cnty.*, 2009-NMCA-110, ¶ 11, 147 N.M. 127, 217 P.3d 613. We review questions involving statutory interpretation, preemption, and constitutional challenges de novo. *See Oldham v. Oldham*, 2009-NMCA-126, ¶ 5, 147 N.M. 329, 222 P.3d 701 ("We review

6

the district court's statutory interpretation and conclusions of law de novo."), *aff'd in part, rev'd in part on other grounds*, 2011-NMSC-007, 149 N.M. 215, 247 P.3d 736; *Weise v. Washington Tru Solutions, L.L.C.*, 2008-NMCA-121, ¶ 9, 144 N.M. 867, 192 P.3d 1244 ("Whether a state claim is preempted by federal law is a legal question that we review de novo."); *ACLU of N.M. v. City of Albuquerque*, 2006-NMCA-078, ¶ 10, 139 N.M. 761, 137 P.3d 1215 ("We review constitutional challenges de novo."). Turning to the issues on appeal, we review them in the order presented.

The Class first argues that STOP is contrary to varying provisions in the New Mexico Constitution dealing with separation of powers principles. Specifically, the Class claims that Albuquerque unlawfully "usurped judicial power" by creating "an inferior administrative court to govern and rule upon violations of the New Mexico Motor Vehicle Code [(MVC)]." The assumption underlying this argument is that STOP violations are, in fact, MVC violations. In *Titus*, we considered and rejected the claim that "STOP violations are 'properly' MVC violations." ___-NMCA-___, ¶ 31. Because the assumption underlying the Class's separation of powers argument is invalid, the argument fails.

The Class next argues that STOP conflicts with "existing state law" as it impermissibly declares "one, isolated traffic violation" a public nuisance. In *Titus*, we set out the law of nuisances; concluded that speeding and red light infractions, the

7

target of STOP, could constitute nuisances per se if so designated by a municipality; explained that, when a municipality determines that certain conduct or conditions constitute a public nuisance, such a determination is entitled to substantial deference and is deemed presumptively correct; and, finally, concluded that "Albuquerque acted within its municipal authority as provided in [NMSA 1978,] Section 3-18-17(A) [(2009)] in enacting STOP and designating speeding and red light infractions nuisances." *Titus*, ___-NMCA-___, ¶ 21. This conclusion governs the Class's nuisance argument.

In the nuisance section of the brief in chief, the Class also appears to claim that STOP is inconsistent with and preempted by the MVC. This argument was addressed and rejected in *Titus* where we stated that "STOP does not conflict with the MVC or invade the state's statutory authority to regulate traffic under the MVC." *Id.* ¶ 35. We explained that "STOP merely provides civil monetary penalties for conduct that is also a criminal offense under the MVC" and that "[t]hose civil monetary penalties do nothing to upend the MVC." *Id.* As in *Titus*, we reject the assertion that STOP is preempted by the MVC. *Id.* We proceed to the Class's next argument.

The Class asserts that STOP is "unconstitutional because it treats a criminal case as a civil case[.]" In *Titus*, we concluded that STOP is a civil remedial legislation enacted for the purpose of nuisance abatement and not, as was argued by the appellant

in *Titus* and as the Class argues in this appeal, a criminal statute. *Id.* ¶¶ 36-37. The Class goes on to argue that the due process rights of individuals charged with STOP violations are adversely impacted because STOP lowers the evidentiary burden of proof regarding what is, in the Class's view, a criminal penalty. [**AB 9**] This argument fails in light of our conclusion that a STOP violation does not constitute a criminal offense.

Next, the Class raises a procedural due process objection. It argues that the administrative hearing process in which alleged violators must participate if they wish to challenge a STOP violation is woefully inadequate in light of the nature of the deprivation associated with a STOP violation. The Class does not focus on the seizure provisions of STOP. Rather, its primary objection appears to be that STOP does not permit alleged violators an adequate opportunity to cross-examine the witnesses and the evidence that form the basis of a STOP violation. Specifically, the Class contends that alleged violators are denied "access to the technologies and equipment used by" Albuquerque to prove the violation and that STOP bars an alleged violator from "asserting defective calibration" of the equipment. We are unpersuaded.

First, the Class's contentions as to the process are contrary to what is stated in STOP. Albuquerque, N.M., Ordinances, chapter 7, article XI, section 7-11-5(F) (2009) of STOP provides that the alleged violator "may challenge the weight or

accuracy of the evidence." The Class appears to concede that this provision undermines its claims and counters that this provision is meaningless as alleged violators are given "no avenue in which to challenge the accuracy of the evidence." We do not agree. Albuquerque, N.M., Ordinances, chapter 7, article XI, section 7-11-5(G) of STOP provides specific procedures that govern when a violator objects to the camera speed device evidence. In light of this provision, it appears to us that STOP provides alleged violators the opportunity to do exactly what the Class contends they cannot: challenge the accuracy and functionality of the electronic detection equipment.

In addition to the foregoing, we note that the Class cited almost no authority in support of its due process argument. *See ITT Educ. Servs., Inc. v. Taxation & Revenue Dep't*, 1998-NMCA-078, ¶ 10, 125 N.M. 244, 959 P.2d 969 (stating that this Court will not consider propositions that are unsupported by citation to authority). Indeed, the Class has neither identified nor set out the analysis that governs procedural due process objections. In *Titus*, we analyzed the enforcement procedures in STOP under the standard articulated in *Board of Education v. Harrell*, 118 N.M. 470, 478, 882 P.2d 511, 519 (1994) and, after considering the procedures under the factors established in *Harrell*, we concluded that they were essentially fair. *Titus*, ___-NMCA-___, ¶ 43. Based on that conclusion, we reject the Class's procedural due process claim.

The Class next raises two jurisdictional issues. The Class argues that administrative enforcement of STOP is contrary to both NMSA 1978, Section 30-8-8(B) (1963), and NMSA 1978, Section 34-8A-3(A)(1) (2001). We addressed whether the former of these two provisions, Section 30-8-8(B), conflicted with STOP in *Titus*. Section 30-8-8(B) provides the following:

> A civil action to abate a public nuisance may be brought, by verified complaint in the name of the state without cost, by any public officer or private citizen, in the district court of the county where the public nuisance exists, against any person, corporation or association of persons who shall create, perform or maintain a public nuisance.

The Class argues that this statute requires Albuquerque to "process" STOP violators through the Bernalillo County district court and prohibits Albuquerque from enforcing STOP through an administrative hearing. In *Titus*, we concluded that Section 30-8-8(B) "does not preclude [an] abatement action from first being brought in an administrative setting with express allowance for an appeal to the district court as is provided in STOP." *Titus*, ___-NMCA-___, ¶ 29. This conclusion addresses the Class's concern.

Turning to the Class's other jurisdictional claim, we observe that the appellant in *Titus* also asked us to evaluate whether STOP was inconsistent with Section 34-8A-3(A)(1). *Titus*, ___-NMCA-___, ¶ 30. We declined, however, to address that question as we concluded that the appellant had failed to adequately develop the issue.

11

*Id.* For the reasons below, we reach the same conclusion here.

Section 34-8A-3(A)(1) provides that "a metropolitan court shall have jurisdiction within the county boundaries over all . . . offenses and complaints pursuant to ordinances of the county and of a municipality located within the county in which the court is located." The Class references this ordinance in passing; dedicates only a few cursory sentences to it; fails to analyze or interpret this language; and gives us no direction as to whether a STOP violation is a form of "offense" or "complaint" as contemplated by the statute. Albuquerque points out that it adjudicates many other matters governed by ordinances through administrative hearings including but not limited to: weed and litter removal orders, *see* Albuquerque, N.M., Ordinances ch. 9, art. XIII, § 9-8-28 (1992), and land use issues, *see* Albuquerque, N.M., Ordinances ch. 14, art. XVI, § 14-16-4-4(C) (2008). Thus, the implications of the Class's argument are far reaching. Without more, we decline to reach or rule on whether Section 34-8A-3(A)(1) precludes STOP violations from being adjudicated through an administrative hearing. *See Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076 (stating that this Court has no duty to review an argument that is not adequately developed).

In its final argument, the Class claims that STOP conflicts with Section 3-18-17(A)(3). It asserts that Albuquerque acted in derivation of this statute in the period

of time preceding its enactment and unjustly enriched itself during that time. We disagree. Section 3-18-17(A)(3) was enacted on June 19, 2009, and establishes a fee sharing system between Albuquerque and the State of New Mexico for monies Albuquerque accrued from the STOP program. *Id.* The statute and the agreement memorialized within it became effective as to any monies accrued after the date of enactment. The Class does not argue and there is no indication the statute was intended to be retroactive. *Swink v. Fingado*, 115 N.M. 275, 283, 850 P.2d 978, 986 (1993) ("New Mexico law presumes a statute to operate prospectively unless a clear intention on the part of the [L]egislature exists to give the statute retroactive effect." (internal quotation marks and citation omitted)). Albuquerque correctly argues that it "cannot have violated a law that did not exist." We agree.

**CONCLUSION**

For the foregoing reasons, we affirm.

**IT IS SO ORDERED.**

_____

**CELIA FOY CASTILLO, Chief Judge**

**I CONCUR:**

13

_____

**JAMES J. WECHSLER, Judge**


**MICHAEL E. VIGIL, Judge (dissenting)**

**VIGIL, Judge (dissenting).**

For the reasons stated in my dissent in *Titus v. City of Albuquerque*, No. 29,461, filed March 9, 2011, I dissent.

_____
**MICHAEL E. VIGIL, Judge**

15