IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date:  April 17, 2014

Docket No. 32,632

IN THE MATTER OF THE ESTATE OF
DARRELL R. SCHLICHT, deceased,

and concerning

STEPHAN E. BARLOW,

    Plaintiff-Appellant,

v.

RODNEY OLGUIN, as personal representative
of the Estate of Darrell Robert Schlicht,

    Defendant-Appellee.

APPEAL FROM THE DISTRICT COURT OF VALENCIA COUNTY
James Lawrence Sanchez, District Judge

Pregenzer Baysinger Wideman & Sale, P.C.
Marcy Baysinger
Albuquerque, NM

for Appellant

Law Office of Tibo J. Chavez, Jr.
Tibo J. Chavez, Jr.
Belen, NM

for Appellee

## OPINION

**SUTIN, Judge.**

**{1}**     In this trust litigation, we interpret a statute in the Uniform Trust Code in order to

1

resolve a conflict between Plaintiff Stephen E. Barlow, who was to take under a trust, and Defendant Rodney Olguin, who was to take under a will if the trust settlor successfully revoked the trust with the will. The critical question is whether a will that revokes a trust can constitute an effective revocation, given that a will is generally considered ineffective unless and until the testator dies and the will is probated. The district court held that the trust was effectively revoked by the will, thus permitting distribution of the settlor's/testator's property to Olguin. Barlow appeals. We hold that the district court did not err.

## BACKGROUND

{2} Darrell R. Schlicht (the settlor) executed the Darrell R. Schlicht Revocable Trust Agreement on November 1, 1991. The last, amendment number four, of several amendments to the trust executed by the settlor, reflects that as of the date of the fourth amendment, November 3, 1998, the settlor and Mae Verlea Schlicht, his wife, were trustees of the trust, and if the settlor and Verlea were unable to serve as successor trustees, Stephen E. Barlow, was to serve as successor trustee. Further, based on an earlier amendment pursuant to which Verlea was named as the intended recipient distributee of any balance remaining in the trust, the fourth amendment stated, "[i]n the event of the death of Mae Verlea Schlicht prior to complete distribution of her share, such trust share or the remainder thereof, shall be distributed to Stephan E. Barlow, or to his descendants by right of representation should she predecease me." Barlow was Verlea's nephew.

{3} Section 5.1 of the trust contained the following provision related to revocation of the trust.

> The [settlor] reserves the right and power at any time or times during [the settlor's] lifetime without the consent of any other person to amend this Agreement in whole or in part, and to revoke or terminate this Agreement as it affects the [settlor's] separate and community property by a duly executed instrument to that effect, signed by the [settlor] and delivered to the Trustee.

This revocation-related Section 5.1 came into question when Verlea died on December 17, 2010, and Darrell died a day later on December 18, 2010, leaving a Last Will and Testament he had executed on December 16, 2010 (the will). The will stated:

> That I, Darrell Robert Schlicht . . ., hereby make, publish[,] and declare this to be my LAST WILL AND TESTAMENT, hereby revoking any and all former Wills, Codicils[,] and Testamentary dispositions of any kind or nature heretofore made by me at any time, and also revoking any trust provision of the Darrell R. Schlicht Revocable Trust Agreement dated November 1, 1991, relating to the death of Mae Verlea Schlicht and her share in such trust agreement, which shall pass into my estate and be distributed in accordance with the provisions of my last will and testament.

2

**{4}** The settlor, as testator under his will, appointed Rodney Olguin as personal representative and gave, devised, and bequeathed all of his estate to Olguin. Olguin and his wife were the caretakers for the settlor and Verlea for a number of years.

**{5}** The will was admitted to informal probate on January 3, 2011, in the district court. Olguin was appointed personal representative of the estate. On February 15, 2012, Olguin filed a motion to be appointed successor trustee of the trust on the ground that the will revoked the trust. Barlow opposed the motion. And Olguin replied. After a hearing on Olguin's motion in March 2012, the district court (Judge Richard Knowles) requested further briefs on whether the trust was revoked by the will's revocation clause.

**{6}** After a hearing in October 2012 on the supplemental briefing, the district court (Judge James Lawrence Sanchez) granted Olguin's motion in a November 26, 2012, order. NMSA 1978, Section 46A-6-602(C) (2007) was central to the issue before the court. The section states:

> C. The settlor may revoke or amend a revocable trust:
>
> (1) by substantial compliance with a method provided in the terms of the trust; or
>
> (2) if the terms of the trust do not provide a method or the method provided in the terms is not expressly made exclusive, by:
>
> (a) a later will or codicil that expressly refers to the trust or specifically devises property that would otherwise have passed according to the terms of the trust; or
>
> (b) any other method manifesting clear and convincing evidence of the settlor's intent.

*Id.*

**{7}** The court determined that (1) Section 46A-6-602(C) applied to the method of revocation of the trust; (2) Section 5.1 of the trust set out the requirements for revocation of the trust, but did not expressly state that those requirements were the exclusive means by which the trust could be revoked; (3) the revocation of the trust in the will demonstrated substantial compliance with the terms of the trust related to its revocation and manifested the settlor's intent to revoke the trust; and (4) Barlow's interest in the trust as a remainder beneficiary was based on the provisions in the trust benefitting Verlea and, consequently, revocation of trust provisions related to the death of Verlea in the will served to revoke Barlow's interest as a beneficiary. The court then held that the will revoked the trust. And the court appointed Olguin as successor trustee of the trust "for the purpose of transferring all property from the [trust] to the Estate of Darrell R. Schlicht." Barlow appealed the

3

court's November 26, 2012, order.

**{8}** On appeal, Barlow asserts the following points: (1) a trust the terms of which require revocation by a written instrument executed during the settlor's lifetime cannot be revoked by the settlor's will; and (2) if this Court enforces the revocation as stated in the will, the revocation was incomplete and Barlow remains entitled to distribution of trust property.

## DISCUSSION

### Standard of Review

**{9}** We agree with the parties that the facts are not in dispute and that the case involves interpretation of the trust language and statutory construction, requiring our de novo review. *See Oldham v. Oldham*, 2011-NMSC-007, ¶ 10, 149 N.M. 215, 247 P.3d 736 ("Statutory construction is a matter of law we review de novo." (internal quotation marks and citation omitted)); *Cable v. Wells Fargo Bank N.M., N.A.*, 2010-NMSC-017, ¶¶ 9-10, 148 N.M. 127, 231 P.3d 108 (stating that, where the facts are undisputed, we review "the interpretation of trust language and the application of statutes to the trust and its terms" de novo).

### I. Whether the Trust Was Revoked

**{10}** As his first point, Barlow argues that the will did not become effective until the settlor's death, and therefore, at the time the will was admitted to probate, the trust was irrevocable. Thus, according to Barlow, the terms of the trust controlled the appointment of the successor trustee and the distribution of trust property. Barlow argues that, as a consequence, he must be appointed successor trustee and that he is entitled to distribution of trust property.

**{11}** Barlow argues that the terms of revocation in the trust provided an exclusive, meaning sole, method of revocation, that this exclusive method of revocation must be strictly adhered to, and that the court had no statutory or other basis on which to hold that the will revoked the trust. *See Oldham*, 2011-NMSC-007, ¶ 15 (stating that the appellate courts "must honor legislative intent that wills and trusts be revoked in strict accordance with the statutory methods and formalities established by the [Uniform Probate Code] and the [Uniform Trust Code]" and that "[r]evocation of wills and trusts is governed by mandatory statutes"); *Gushwa v. Hunt*, 2008-NMSC-064, ¶ 15, 145 N.M. 286, 197 P.3d 1 (stating that the "Probate Code requires an exacting attention to form as well as intent to validate a revocation"). Barlow faults the district court for determining that Section 5.1 of the trust did not expressly state that its requirements were the exclusive means by which the trust could be revoked and for failing to focus solely on whether the will substantially complied with the exclusive method of revocation required by the trust.

**{12}** In addition, according to Barlow, under Section 5.1 of the trust, the trust "could only

4

be revoked during [the settlor's] lifetime by a duly executed instrument[,]" and the trust was not revoked during his lifetime because the will did not become effective until his death, after which time the trust was already irrevocable. In support of this argument, Barlow cites New Mexico authority indicating that a will is not effective to revoke a trust upon the death of the grantor-testator. *See Oldham*, 2011-NMSC-007, ¶¶ 21-22 (disagreeing with an argument that a marital property judgment could act to revoke a will and trust posthumously because the will and trust became irrevocable when the grantor/testator died). And he cites foreign authorities for the proposition that if the grantor reserves a power to revoke his trust only by a transaction inter vivos (while he is alive), such as by a notice to the trustee, he cannot revoke the trust by his will. *See In re Estate of Lindstrom*, 191 Cal. App. 3d 375, 385 (Ct. App. 1987) (relying on the Restatement (Second) of Trusts § 330 cmt. j (1959) for the proposition that when the settlor of a trust reserves a power to revoke the trust only in a particular manner, the trust may be revoked only in that manner; thus, for example, a trust provision permitting revocation by a transaction inter vivos, precludes a revocation by a will); *Merchants Nat'l Bank v. Weinold*, 160 N.E.2d 174, 177 (Ill. App. Ct. 1959) (relying on the Restatement (First) of Trusts § 330 cmt. j (1935) for the same); *One Valley Bank, N.A. v. Hunt*, 516 S.E.2d 516, 520 (W.Va. 1999) (same); *see also Brown v. Int'l Trust Co.*, 278 P.2d 581, 583 (Colo. 1954) (en banc) (relying on the proposition that where a trust provision permits revocation or amendment "only during the lifetime of" the settlor, a revocation in a will that takes effect after the settlor's death does not revoke or amend the trust provisions (internal quotation marks and citation omitted)).

**{13}**     Olguin pits the critical importance of the settlor's intent against Barlow's arguments, stating that the terms of the trust and later amendments indicate the settlor's intent to revoke the trust and to leave the trust assets to the heirs of his estate. Olguin points to *Oldham*'s language that "[a] settlor can revoke or amend a revocable trust by complying with a method of revocation provided in the terms of the trust." 2011-NMSC-007, ¶ 18 (internal quotation marks and citation omitted). And he draws on *Cable* in which our Supreme Court stated that, under the Uniform Trust Code, "the phrase 'terms of [a] trust' is defined as 'the manifestation of the settlor's intent regarding a trust's provisions as expressed in the trust instrument or as may be established by other evidence that would be admissible in a judicial proceeding.'" 2010-NMSC-017, ¶ 12 (quoting NMSA 1978, § 46A-1-103(R) (2007) of the Uniform Trust Code). Olguin also points to "the basic principle that in construing the provisions of wills and trust instruments, the court must attempt to ascertain and give effect to the [settlor's] intent." *Cable*, 2010-NMSC-017, ¶ 11 (alteration, internal quotation marks, and citation omitted).

**{14}**     In construing Section 46A-6-602(C)(2) and Section 5.1 of the trust, Olguin contends that the settlor "was free to amend or revoke his trust at any time, by a duly executed instrument signed by [him] and delivered to the trustee without consent of any other person" and that the trust "does not expressly establish that this is the *exclusive* means by which the trust could be revoked." Thus, according to Olguin, a will that specifically mentions and revokes the trust "substantially conforms to both the express method of revocation contained in the trust document" and Section 46A-6-602(C)(2)(a)'s permitted method of "a later will

5

. . . that expressly refers to the trust[.]"

**{15}**     Olguin distinguishes Barlow's New Mexico authority, showing that *Oldham* and *Gushwa* are factually distinguishable, primarily because *Oldham* involved a divorce and its effect on a will and trust, and *Gushwa* involved only revocation of a will and not a trust and did not involve the Uniform Trust Code.  As to Barlow's foreign authority, Olguin shows that *Lindstrom* and *One Valley Bank* were based on significantly different statutory law and that *Merchants National Bank* and *One Valley Bank* did not involve a will that specifically referred to revocation of a specific trust.

**{16}**     We agree with Olguin and with the district court's application of Section 46A-6-602(C)(2) under these circumstances.  The terms of the settlor's trust provided a method to revoke the trust's provisions, but that method was not expressly stated to be the exclusive method of revocation.  Thus, under Subsections (C)(1) and (2), the settlor appropriately revoked the trust by substantial compliance with a method provided in the terms of the trust, by the later will that expressly referred to the trust, and also by specifically devising property that otherwise would have passed according to the terms of the trust.

**{17}**     Barlow's authorities and argument to the contrary are not persuasive under the circumstances of this case. The principle espoused in Barlow's foreign authorities—that where a trust provision dictates the exclusive means of amendment or revocation, no other means will suffice to amend or revoke a trust—comports with Section 46A-6-602(C)(2). *See id.* (stating that the subsection only applies where "the method provided in the terms [of the trust] is not expressly made exclusive").  Thus, we need not look further than New Mexico statutory law in considering this matter.  Had the settlor's trust expressly limited the means of revocation or amendment to an inter vivos revocation, Barlow would likely have prevailed in this matter under the theory that the settlor's will did not become effective until the will was probated.  But the facts of this case do not warrant an application of that principle.

**{18}**     Section 46A-6-602(C)(1) allows revocation by "substantial compliance with a method provided in the terms of the trust[.]"  Here, the will executed during the settlor's lifetime constituted substantial compliance with the terms of the trust.  Those terms required a duly executed instrument signed by the settlor and delivered to the trustee during the settlor's lifetime.  Further, we do not read the exclusivity language in Section 46A-6-602(C)(2) as rejecting compliance through a duly executed will signed by the settlor and delivered to the trustee during the settlor's lifetime.  Additionally, the trust, specifically Section 5.1, and the will manifest a clear intent on the settlor's part that the trust was revoked by the will and that Olguin take, under the will, the property formerly held in the trust. We conclude that the district court resolved the matter correctly.  *See* § 46A-1-103(R) (" '[T]erms of a trust' means the manifestation of the settlor's intent regarding a trust's provisions as expressed in the trust instrument or as may be established by other evidence that would be admissible in a judicial proceeding[.]").

**II.     Whether the Revocation Was Incomplete, Permitting Barlow to Claim Trust**

**Property**

{19}     Barlow's fall-back position, if we disagree with him in regard to whether the will was effective to revoke the trust, is that the will only revoked trust provisions "relating to the death of Mae Verlea Schlicht and her share in such trust agreement[,]" and thus, "[b]y its own terms, the purported revocation only revoked provisions for the benefit of . . . Verlea."

{20}     In amendment number three to the trust, in Section 4.1.1, the settlor provided that the remaining balance, if any, in the trust was to be distributed to Verlea. In amendment number four, Section 4.1.2 was amended to read that if Verlea died before the complete distribution of her share, that share or the remainder of it was to be distributed to Barlow, should Verlea predecease the settlor. Barlow argues that because Verlea died before her share was distributed, the revocation had no effect on the distribution of trust property and that the alternative provision in the fourth amendment controls the distribution of trust property favoring distinction to Barlow. That is, "[t]he purported revocation served only to extinguish Verlea's interests as a remainder beneficiary[,]" leaving intact Barlow's entitlement to distribution of trust property.

{21}     We are unable to agree with Barlow. We hold that the district court properly concluded that all provisions relating to any of Verlea's remaining interests were revoked, including in particular Barlow's interest as a beneficiary. Barlow essentially conceded this point in the district court, stating:

> [I]f the provision in the will revokes the trust, then the property, as I see it, passes through [the settlor's] probate estate and to the Olguins. If the will did not revoke the trust, then Mr. Barlow is the nominated successor trustee, he is also the sole remainder beneficiary, so the property then would pass through the trust to Mr. Barlow.

This view of the settlor's intent in regard to the property upon revocation of the trust is manifestly more reasonable than that now advanced by Barlow for reversal.

**CONCLUSION**

{22}     We affirm the district court.

{23}     **IT IS SO ORDERED.**

_____
**JONATHAN B. SUTIN, Judge**

**WE CONCUR:**

7

_____

**JAMES J. WECHSLER, Judge**


_____

**LINDA M. VANZI, Judge**