IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2011-NMCA-044

Filing Date: March 28, 2011

Docket No. 29,441

CHERYL LEE DURHAM GORDON,

        Petitioner-Appellee,

v.

TIMOTHY E. GORDON,

        Respondent-Appellee,

HPSC, INC. and DE LAGE LANDEN
FINANCIAL SERVICES, INC.,

        Intervenors-Appellants,

NASSAU LENS COMPANY, INC. d/b/a
NOVA OPTICAL LABORATORY,

        Intervenor,

ZIA TRUST, INC.,

        Receiver-Appellee.

APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY
William C. Birdsall, District Judge

Atkinson & Kelsey, P.A.
Patrick L. McDaniel
Albuquerque, NM

for Appellee Cheryl Gordon

Susan I. Brown
Albuquerque, NM

1

for Appellee Timothy Gordon

Kenneth C. Leach & Associates PC
Kenneth C. Leach
Albuquerque, NM

for Appellee Zia Trust, Inc.

Aldridge, Grammer, Jeffrey & Hammar, P.A.
David A. Grammer, III
Albuquerque, NM

for Appellants

## OPINION

**VIGIL, Judge.**

**{1}**     This case involves a marital settlement agreement (MSA) in a divorce case in which
Husband and Wife agreed to place assets under the control of a receiver to pay personal
taxes and community debts, which was approved by the district court and merged into the
decree.  The assets consist of an annuity, money purchase plan, profit sharing plan, and
individual retirement accounts, which are normally exempt from legal process in favor of
creditors under NMSA 1978, Section 42-10-2 (1983) and NMSA 1978, Section 42-10-3
(1937). Creditors of Husband and Wife (Intervenors) subsequently intervened in the divorce
case seeking payment of their bills from the assets.  The district court concluded that the
assets are protected from Intervenors' claims, and Intervenors HPSC, Inc. and De Lage
Landen Financial Services, Inc. appeal.  For the purposes of this opinion, "Intervenors"
refers only to the appealing parties.

**{2}**     We discuss: (1) whether Husband and Wife could waive the protections of Sections
42-10-2 and 42-10-3; (2) the legal effect of merging the MSA into the final decree; and (3)
whether the district court erred in modifying the decree based on Sections 42-10-2 and 42-
10-3.  After consideration of these issues, we reverse and remand for further proceedings.

## BACKGROUND

**{3}**     While represented by counsel, Husband and Wife entered into a MSA.  In pertinent
part, the MSA provides:

> The parties agree that a receiver should be appointed to deal with all
> taxing entities and to pay taxes and all other community debts existing as of
> July 24, 2007, either personal or business.  The receiver's priority shall be to

2

pay all personal federal and state income taxes due. After the taxes are paid, the receiver shall pay any other debts existing as of July 24, 2007.

. . . . The parties agree that the assets that will be in control of the receiver are as follows:

1. Funds in the court registry;
2. Equipment and inventory and any other value associated with the optometry business;
3. The Vanguard Money Purchase account;
4. The Vanguard Profit Sharing plan;
5. The Metlife Annuity;
6. Wife's Fidelity IRA;
7. Husband's Fidelity IRA;

**{4}** The judgment and partial decree of dissolution of marriage provides, "The Marital Settlement Agreement between the parties is incorporated into this Decree, and the parties are ordered to carry out the provisions of the Marital Settlement Agreement." Intervenors filed a motion to intervene in the divorce case on grounds that they are creditors of the marital community estate. A hearing officer held a hearing on the motion and recommended that the petition be granted. No objections to the hearing officer's recommendation were filed and the intervention was allowed.

**{5}** The receiver then filed a petition for approval to pay outstanding expenses and liabilities. Therein, the receiver advised the district court that certain assets of Husband and Wife consist of an annuity, money purchase plan, profit sharing plan, and individual retirement accounts. These are items numbered 3 through 7 set forth above in the MSA, and hereinafter we refer to them collectively as the "assets." The receiver advised the district court that the assets appeared to fall under the exemptions of Sections 42-10-2 and 42-10-3. The receiver sought a judicial determination as to which assets, if any, were exempt from the claims of creditors of Husband and Wife, or in the alternative, for an order setting forth the order of priority of the payment of the debts from which the assets could be paid. Further, the receiver sought guidance and instruction from the district court with reference to unpaid state and federal income taxes of Husband and Wife and the debts owed Intervenors. The receiver disclosed that based upon information received from a certified public accountant, there could be substantial tax liabilities due and owing by Husband and Wife, which had not yet been determined.

**{6}** The receiver's petition was first considered by the hearing officer. She conducted a hearing at which all interested parties, including Intervenors, participated. The hearing officer determined that the only remaining property owned by Husband and Wife were the assets. The amounts owed to the State of New Mexico and the Internal Revenue Service for tax obligations remained unidentified, while the amounts owed Intervenors were specified. However, the hearing officer concluded that the assets of Husband and Wife, "all fall under

3

the definition of assets protected from attachment, garnishment or legal process in favor of any creditor, execution or foreclosure by judgment creditor" as specified in Sections 42-10-2 and 42-10-3. Intervenors objected to the findings and recommendations of the hearing officer. After considering the objections, the district court entered its order adopting the findings and recommendations of the hearing officer. The effect is that the assets cannot be used to pay debts owed by Husband and Wife to Intervenors. Intervenors appeal.

**Whether Husband and Wife Could Waive the Exemptions**

{7}     Husband and Wife argue that because the assets are exempt under Sections 42-10-2 and 42-10-3, the district court did not err in concluding that the assets retain their exempt status, and they are not subject to Intervenors' claims. This reasoning assumes that Husband and Wife did not and could not waive the protections of the statutes.

{8}     Whether these statutes prohibit waiver of their protections presents a question of law, which we review de novo. *See Sonic Indus. v. State*, 2006-NMSC-038, ¶ 7, 140 N.M. 212, 141 P.3d 1266 ("The interpretation of phrases within a statute is a question of law that is reviewed de novo."). "In interpreting a statute, a court not only looks to the plain meaning of the language employed, but also to the object of the legislation." *Dona Ana Sav. & Loan Ass'n v. Dofflemeyer*, 115 N.M. 590, 592, 855 P.2d 1054, 1056 (1993).

{9}     We cannot conclude that these statutes prohibit debtors from voluntarily electing to use assets to pay creditors that would otherwise be exempt from an involuntary transfer. Section 42-10-2 provides in pertinent part that "any interest in or proceeds from a pension or retirement fund . . . is exempt from receivers or trustees in bankruptcy or other insolvency proceedings, executors or administrators in probate, fines, attachment, execution or foreclosure by a judgment creditor." Similarly, Section 42-10-3 directs that the surrender value and all "payments of every kind from any life, accident or health insurance policy . . . shall in no case be liable to attachment, garnishment or legal process in favor of any creditor . . . nor shall it be subject in any other manner to the debts of the person . . . *unless such policy, contract or deposit be taken out, made or assigned in writing for the benefit of such creditor.*" (Emphasis added.) The reference in the statutes to execution, garnishment, and foreclosure proceedings illustrates that they provide an affirmative defense to debtors in these proceedings, thereby protecting the assets from an involuntary transfer to creditors for debts. *See D'Avignon v. Graham*, 113 N.M. 129, 132, 823 P.2d 929, 932 (Ct. App. 1991) (stating that exemption is an affirmative defense). The statutes on their face do not prohibit a debtor from waiving their protections. In fact, Section 42-10-3 itself provides that its protection is waived when the policy is "taken out, made or assigned in writing for the benefit of such creditor."

{10}     With the advice of counsel, Husband and Wife directed in the MSA "that the assets that will be in control of the receiver" include the specific annuity, money purchase plan, profit sharing plan, and individual retirement accounts that are the subject of this appeal. Although property of a debtor may be exempt from an involuntary transfer, the debtor retains

4

rights of ownership in that property. *See Hernandez v. S. I. C. Fin. Co.*, 79 N.M. 673, 675, 448 P.2d 474, 476 (1968) ("[I]t has never been suggested that [exemption] statutes be construed to deprive an individual of his rights of ownership in the exempt property."). One incident of ownership of property is the right to transfer it. *See* 31 Am. Jur. 2d *Exemptions* § 7 (1989) ("[E]xemption statutes are not intended to restrict the freedom of debtors to dispose of exempt property as they wish[.]"). Husband and Wife voluntarily transferred control of the assets to the receiver to pay their debts, and the exemption statutes do not prohibit the voluntary transfer of the assets.

{11}    Husband and Wife argue that their waiver was ineffective when they executed the MSA, because there was nothing to waive at that time. They argue that under Rule 1-065.1(A)(2) NMRA, a writ of execution for seizure of property shall be issued only if: (1) the judgment creditor served the debtor with a notice of the right to claim exemptions, and (2) the debtor has not filed a claim of exemption for the property to be seized or filed a written waiver of the right to claim a statutory exemption from execution specifically describing the property that may be seized. *See* Rule 1-065.2(G), (H) NMRA (providing the same requirements for writs of garnishment). Rule 1-065.1(E) further states that if a "debtor fails to file a claim of exemption within ten (10) days after service of the notice of the right to claim exemptions, the judgment debtor shall be deemed to have waived the right to claim an exemption." *See* Rule 1-065.2(I) (providing the same standard for writs of garnishment). We are then referred to *Brannock v. Brannock*, 104 N.M. 385, 385, 722 P.2d 636, 636 (1986), for the proposition that "To constitute a waiver, there must be an existing right, a knowledge of its existence, and an actual intention to relinquish it[.]"

{12}    Since no writ was served when the MSA was signed, we understand Husband and Wife to argue that there was nothing to waive at that time. We reject this argument because it is inapplicable to the circumstances of this case. No statutory writ was ever served, and there is absolutely no evidence that Husband and Wife were unaware of their rights under the exemption statutes when they executed the MSA with language indicating that receiver should pay taxes and "any other debts."

**Effect of Merging the MSA Into the Decree**

{13}    Our Supreme Court has noted the long-recognized rule that marital settlement agreements "are highly favored in the law." *Unser v. Unser*, 86 N.M. 648, 651, 526 P.2d 790, 793 (1974). Furthermore, "a voluntary property settlement between divorcing spouses, dividing their community property as they see fit, is sacrosanct and cannot be upset by the court granting the divorce, absent fraud, duress, mistake, breach of fiduciary duty, or other similar equitable ground for invalidating an agreement." *Ruggles v. Ruggles*, 116 N.M. 52, 70, 860 P.2d 182, 200 (1993). The MSA between Husband and Wife was a voluntary division of their property as they saw fit. In addition, the district court ordered that the MSA be adopted and incorporated into the decree. This was done at the request of, and with the consent of, Husband and Wife through their counsel. The effect is well settled: "[O]nce an agreement between divorcing parties has been adopted and incorporated into the final

5

divorce decree, the underlying agreement is deemed to have merged with the decree, extinguishing any independent right one of the parties might assert in [the] contract." *Ottino v. Ottino*, 2001-NMCA-012, ¶ 19, 130 N.M. 168, 21 P.3d 37.

**{14}** Thus, when Husband and Wife asked the district court to approve, adopt, and merge the MSA into the decree and the district court did so, the MSA was no longer simply a contractual agreement between Husband and Wife. It became a judgment of the district court. As such, the MSA became enforceable in the same manner, and subject to the same limitations, as any other judgment of the district court.

**Whether the District Court Erred in Modifying the Final Decree**

**{15}** The MSA was merged into the final decree. We are therefore required to determine whether the district court had jurisdiction to modify the decree based on Sections 42-10-2 and 42-10-3. *See Higginbotham v. Higginbotham*, 92 N.M. 412, 413, 589 P.2d 196, 197 (1979) (considering on its own motion, for the first time on appeal, whether the district court had jurisdiction in the divorce case to enforce a new contract which was substituted for terms of the decree); *see also Smith v. City of Santa Fe*, 2007-NMSC-055, ¶ 10, 142 N.M. 786, 171 P.3d 300 ("[I]t is incumbent upon the appellate court to raise jurisdiction questions sua sponte when the Court notices them.").

**{16}** A final decree remains under the control of the district court for thirty days after it is filed and for such further time that may be necessary to enable the court to rule on motions directed against the decree, which were filed within the thirty-day period. NMSA 1978, § 39-1-1 (1917). This statute provides no authority to the district court in this case. The receiver's petition seeking guidance from the district court under Sections 42-10-2 and 42-10-3 was filed more than thirty days after the decree was filed.

**{17}** We are therefore left with Rule 1-060(B) NMRA as the only authority for the district court to modify the decree. Once thirty days has lapsed from the entry of a divorce decree, a court cannot change the original division of the marital property as an exercise of its continuing jurisdiction. *See Higginbotham*, 92 N.M. at 413, 589 P.2d at 197 (citing *Zarges v. Zarges*, 79 N.M. 494, 445 P.2d 97 (1968)). "After the expiration of the time within which to appeal a [divorce decree], allocating responsibility for community debts, and declaring the interests of the parties in the property acquired during marriage, the court in the original proceeding loses jurisdiction to modify the decree except under the provisions of Rule 60(b)[.]" *Mendoza v. Mendoza*, 103 N.M. 327, 331, 706 P.2d 869, 873 (Ct. App. 1985).

**{18}** Neither Husband nor Wife filed a Rule 1-060(B) motion to set aside the provisions of the divorce decree. However, to the extent that the receiver's petition can be construed as a Rule 1-060(B) motion on behalf of Husband and Wife, we consider whether the district court modification of the decree was proper.

**{19}** The grounds for modifying a judgment under Rule 1-060(B) include:

6

(1)    mistake, inadvertence, surprise or excusable neglect;

(2)    newly discovered evidence . . .;

(3)    fraud . . ., misrepresentation or other misconduct of an adverse party;

(4)    the judgment is void;

(5)    the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or

(6)    any other reason justifying relief from the operation of the judgment. . . .

**{20}**    The record fails to set forth any basis for modifying the decree under Rule 1-060(B). A district court determination to modify a judgment under Rule 1-060 is reviewed for an abuse of discretion. *Freedman v. Perea*, 85 N.M. 745, 747, 517 P.2d 67, 69 (1973). However, "when a court misapprehends the law, the court abuses its discretion." *Armijo v. Wal-Mart Stores, Inc.*, 2007-NMCA-120, ¶ 19, 142 N.M. 557, 168 P.3d 129 (internal quotation marks and citation omitted). Thus, to the extent that the district court concluded that the decree could be modified under Sections 40-10-2 and 40-10-3, it abused its discretion.

**CONCLUSION**

**{21}**    We reverse the district court order that the assets are exempt under Sections 42-10-2 and 42-10-3 and remand to the district court for enforcement of the MSA as merged into the final decree.

**{22}    IT IS SO ORDERED.**

 

_____

**MICHAEL E. VIGIL, Judge**

**WE CONCUR:**

_____

**JAMES J. WECHSLER, Judge**

_____

**JONATHAN B. SUTIN, Judge**

7

**Topic Index for *Gordon v. Gordon*, Docket No. 29,441**

| | |
|---|---|
| **CP** | **CIVIL PROCEDURE** |
| CP-IT | Intervention |
| CP-WA | Waiver |
| | |
| **DR** | **DOMESTIC RELATIONS** |
| DR-CU | Community Debts |
| DR-DM | Dissolution of Marriage |
| DR-DP | Division of Property |
| DR-MS | Marital Settlement Agreement |
| DR-MD | Modification of Final Decree |