This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**No. A-1-CA-41283**

**AMIRA LEWIS f/k/a AMIRA FULTON
f/k/a AMIRA EVANS, individually and
as Successor Personal Representative
of the ESTATE OF RABIAH IBNUDDIN,**

Petitioner-Appellee,

v.

**AMINA SALIM, as Personal Representative
of the ESTATE OF NASIR IBNUDDIN,
Deceased,**

Respondent-Appellant.

and

**ALWAN MUHAMMAD,**

Respondent,

**IN THE MATTER OF THE ESTATE OF
NASIR IBNUDDIN, Deceased.**

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Victor S. Lopez, District Court Judge**

Davis Miles, PLLC
Lee Green
Albuquerque, NM

for Appellee

Amina Salim
Zebulon, NC

Pro Se Appellant

**MEMORANDUM OPINION**

**WRAY, Judge.**

**{1}** This matter is on appeal from the district court's judgment granting the petition of Appellee Amira Lewis (Daughter) to quiet title, for declaratory judgment, and to partition real property (the Property) that was once held as tenants in common by Daughter's parents, Rabiah Ibnuddin (Mother) and Nasir Ibnuddin (Father). Appellant Amina Salim (Wife) raises multiple issues on appeal, which include challenges to the evidence supporting the district court's conclusions, the allocation of liability for debt that encumbers the Property, the procedures used to partition the Property, and the award of attorney fees. For the reasons that follow, we reverse and remand for clarification of the rental amounts owed by Wife. Otherwise, we affirm.

**BACKGROUND**

**{2}** We set forth the factual background based on the undisputed evidence and the uncontested findings of the district court. Father and Mother originally owned the Property at issue in this case as joint tenants. In 2006, they signed a warranty deed that conveyed the Property to themselves as tenants in common. Shortly thereafter, in 2007, Mother executed a will that identified Father and Daughter, in order of preference, as the personal representative of Mother's estate and left Mother's share of the Property in equal shares to Daughter and Alwan Muhammad (Son). Soon after the execution of Mother's 2007 will, Mother died, and Father married Wife. Father took a reverse mortgage in 2010. In 2011, Father opened an informal probate of Mother's estate, indicated that Mother died intestate, was appointed personal representative, and transferred Mother's share of the Property to himself. After the Property transfer, Father secured the reverse mortgage with a deed of trust, which encumbered the Property.

**{3}** Father died in 2015 and Daughter discovered the reverse mortgage around that time. Daughter filed a petition to quiet title, enter declaratory judgment, and partition the Property. After a trial, the district court entered an order granting the petition for partition by sale and later denied Wife's motion to reconsider. The district court retained jurisdiction to enforce the judgment, and Wife appealed.

**{4}** While the appeal was pending in this Court, Daughter returned to the district court seeking an order to show cause because Wife refused to pay rent or cooperate with the partition by sale of the Property, in violation of the district court's order. Daughter requested that Wife be removed as the personal representative and that Daughter be appointed as the special administrator of Father's estate. The district court determined that because no bond had been posted or stay requested, jurisdiction remained in the district court to grant Daughter's request, which it did. We will provide additional factual detail as it becomes pertinent to our analysis.

**DISCUSSION**

**{5}**     We broadly categorize Wife's arguments as challenging (1) the evidence supporting the district court's factual findings; (2) the district court's allocation of liability to pay the reverse mortgage; (3) the procedures used to partition the Property; (4) conflicting conclusions of law; (5) an award of attorney fees; and (6) whether res judicata barred the action entirely.[1] We observe that this is a memorandum opinion prepared for the benefit of the parties to address the arguments that the parties have raised, and this opinion therefore should be not be read to analyze or approve any issue not explicitly discussed. *See Kokoricha v. Est. of Keiner*, 2010-NMCA-053, ¶ 18, 148 N.M. 322, 236 P.3d 41 ("[C]ases are not authority for propositions not considered." (internal quotation marks and citation omitted)). Before we turn to Wife's issues, however, we must ensure our own jurisdiction.

**I.     Finality**

**{6}**     This Court generally has jurisdiction only over final orders, *see Khalsa v. Levinson*, 1998-NMCA-110, ¶ 12, 125 N.M. 680, 964 P.2d 844, and "[b]ecause this is a matter of appellate jurisdiction, we raise the issue ourselves," *see High Ridge Hinkle Joint Venture v. City of Albuquerque*, 1994-NMCA-139, ¶ 29, 119 N.M. 29, 888 P.2d 475. Orders for partition are nonfinal orders, because "further judgment and decree to vest and divest title to the respective portions upon partition, or, in the event of a sale, to confirm the sale and distribute the proceeds is required." *Prude v. Lewis*, 1967-NMSC-174, ¶ 27, 78 N.M. 256, 430 P.2d 753. In the present case, however, after Wife appealed the district court's order for partition, the parties sought and obtained the district court's approval to sell the Property. *See* Rule 11-201(C) NMRA ("The court . . . may take judicial notice on its own."). The Property was sold and the proceeds were placed in the district court registry awaiting distribution after this appeal. Because the matter has become final while the appeal was pending, this Court has jurisdiction to consider the issues Wife raises on appeal. *See Healthsource, Inc. v. X-Ray Assocs. of N.M., P.C.*, 2005-NMCA-097, ¶ 15, 138 N.M. 70, 116 P.3d 861 ("[I]t is this Court's practice, when a notice of appeal is filed prematurely, to take jurisdiction if the final order is entered during the early pendency of the appeal."); *see also* Rule 12-201(A)(3) NMRA ("A notice of appeal filed after the announcement of a decision, or return of the verdict, but before the judgment or order is filed in the district court clerk's office shall be treated as filed after that filing and on the day of the filing.").

**II.     The Sufficiency of the Evidence**

---

[1]Wife additionally maintains that the district court improperly appointed Daughter to administer Mother's estate because a codicil to *Mother's* 2007 will indicated that Father was to be the personal representative. The district court did not, in this proceeding, appoint Daughter to serve as Mother's personal representative. That appointment occurred in another proceeding (D-202-PB-2011-0016). The district court in the present case replaced Wife with Daughter as the person responsible for administering *Father's* estate. Because this appeal does not arise from the proceeding in which Daughter was appointed to administer Mother's estate, we do not review this issue.

**{7}** Wife argues that (1) the evidence did not support the district court's finding that Father knew about Mother's 2007 will when he stated in the 2011 probate pleadings that Mother died intestate; and (2) the evidence showed that regardless, Father had authority as the personal representative of Mother's estate to transfer and encumber the Property. On appeal, we do not disturb the district court's judgment "if the findings of fact entered by the court are supported by substantial evidence, are not clearly erroneous, and are sufficient to support the judgment." *In re Est. of Vigil*, 2012-NMCA-121, ¶ 14, 296 P.3d 1209. We address each argument in turn.

**{8}** The evidence supported the district court's finding that Father knew about Mother's 2007 will. Daughter and Father were identified in order of preference as personal representatives in the 2007 will, and the 2007 will was filed with the district court. A subsequent codicil to the 2007 will named Father first as the personal representative and named Daughter as the successor. Both Daughter and Son (collectively, Children) testified about conversations with Father that indicated his knowledge that Mother had bequeathed her share of the Property to Children. Wife argues that the testimony of Children was inadmissible hearsay, but neither her briefing nor the record indicates that Wife raised this issue in the district court, and we therefore do not reach this argument. *See* Rule 12-318(A)(4) NMRA (requiring, for each issue in an appellant's brief in chief, "a statement explaining how the issue was preserved in the court below, with citations to . . . [the] record proper, transcript of proceedings, or exhibits relied on"); *Est. of Nauert v. Morgan-Nauert*, 2012-NMCA-037, ¶ 28, 274 P.3d 799 (describing "[t]he primary purposes of the preservation requirements" as "(1) to specifically alert the district court to a claim of error so that the error may be corrected at that time, (2) to allow the opposing party adequate opportunity to respond to a claim of error, and (3) to create a sufficient record to allow this Court to make an informed decision regarding the contested issue"); *Oldham v. Oldham*, 2011-NMSC-007, ¶ 20, 149 N.M. 215, 247 P.3d 736 (declining to reach an unpreserved issue). As a result, we conclude that substantial evidence supported the district court's finding that Father knew about Mother's 2007 will.

**{9}** Wife contends that because Children may have received notice of the 2011 probate and did not produce Mother's will in response, Father had the authority "under the Probate Code" as personal representative to transfer the Property to himself "as the surviving spouse and encumber the entire [P]roperty." The district court, however, found that Father knew about Mother's will that bequeathed half of the property to Children and that his "representations regarding his 100 percent ownership of the Property w[ere] intentional, fraudulent, wrongful, and in bad faith." The district court also found that Children did not receive prior notice of (1) Father's appointment as personal representative of Mother's estate; (2) Father's transfer of Mother's interest in the Property to himself; or (3) the reverse mortgage. *See* NMSA 1978, § 45-3-713(A) (1975) (making voidable "any transaction which is affected by a substantial conflict of interest on the part of the personal representative" unless it is authorized by the will or "approved by the district court after notice to interested persons"). Wife challenges the sufficiency of the evidence supporting these findings—a challenge we reject based on Children's testimony—but provides no authority that Father's authorization "under the

Probate Code" extended, under these circumstances, to the transfer of Mother's share of the Property to himself and the encumbrance of the entire Property. *See Oldham*, 2011-NMSC-007, ¶ 20 ("This Court will not review issues raised in appellate briefs that are unsupported by cited authority." (alteration, internal quotation marks, and citation omitted)); *id.* ("Mere reference in a conclusory statement will not suffice and is in violation of our rules of appellate procedure." (internal quotation marks and citation omitted)).

### III.    The Reverse Mortgage Debt

**{10}**    Several of Wife's arguments pertain to the district court's finding that Father's estate and Wife (and not Children or Mother's estate) are solely responsible for satisfying the reverse mortgage debt. Wife contends that the district court should have (1) viewed the debt as "separate debt"; (2) calculated the percentage shares in the Property, and therefore the debt responsibilities, differently; and (3) joined the lender as an indispensable party and ensured that the judgment reflected that no party would owe "a deficiency judgment." Before turning to the specifics of the arguments, we review the pertinent findings and conclusions.

**{11}**    The district court determined that Mother's and Father's estates each held a half interest, and that Children were entitled to a total 87.5 percent interest in the Property based on Mother's will (50 percent) and the intestate succession statute applied to Father's 50 percent interest. *See* NMSA 1978, § 45-2-102(A)(2) (1975) (addressing intestate shares and allocating 75 percent to the decedent's surviving children and 25 percent to a surviving spouse). The district court first concluded that at the time of his death, Father's interest in the Property was "sole and separate property." Next, the district court determined how to partition the Property by sale, including the disbursement of proceeds from any sale. Within the partition analysis, the district court concluded that Father's estate and Wife would be "solely liable for repayment of the" reverse mortgage. The district court made clear that Wife's "share of the sale proceeds of the Property shall first be used to offset any and all liabilities due and owing hereunder, including the [reverse mortgage], and any deficiency shall continue to be the personal liability of [Wife] alone." In this regard, the district court found that Wife knew about and used the mortgage funds without the approval of Children or any benefit to them, and Wife does not challenge these findings.

**{12}**    Based on these findings, we reject Wife's argument that because the Property was separate and not community property, the reverse mortgage on the Property is separate and not community debt. Specifically, Wife contends that the reverse mortgage is a separate debt because she did not know about Father's misrepresentations in the 2011 probate of Mother's estate and because the funds were used to improve Father's separate real property. For support, Wife cites *Fernandez v. Fernandez*, 1991-NMCA-001, 111 N.M. 442, 806 P.2d 582. But unlike *Fernandez*, the present case does not involve a property division in a divorce, *see id.* ¶ 8, and the district court expressly agreed with Wife's position that the Property was Father's separate property. Wife received a portion of Father's interest in the Property based on

the intestate succession statute, and the debt was allocated as part of the partition by sale. We therefore turn to the law of partition. The evidence supported the district court's findings that Wife knew about and used the reverse mortgage funds and that Children did not. For this reason, we cannot fault the district court's decision, as part of the partition of the Property, to relieve Children of the obligations of the reverse mortgage. *See Prude*, 1967-NMSC-174, ¶ 25 ("The trial court, in making any partition of lands, has the right to make a determination of the equities as between the parties.").

**{13}** For similar reasons, we affirm the district court's calculation of Children's and Wife's interests in the Property. Wife contends that the percentage shares in the Property should have been calculated from the time of Mother's death and then again from the time that the reverse mortgage was taken in 2010. By Wife's calculation, Father would have received a community share of Mother's one-half interest in the Property in addition to the statutory allowances of $45,000 that would have been available when Mother died. Applied to the value of the Property at that time, Father would have controlled $141,500 of the Property's value—or approximately 73 percent— and Children would have been entitled to 27 percent. Wife goes on to suggest that both estates (Mother's and Father's) should have been required to repay the reverse mortgage according to these percentages. We disagree.

**{14}** The district court properly calculated the shares and Father's estate was not entitled to recover the statutory allowances that may have been available at the time of Mother's death. Father and Mother, when they conveyed the Property to themselves as tenants in common, did not impact the community nature of the Property. Instead, the conveyance allowed Father and Mother to pass their undivided one-half interests in the Property at the time of their deaths. *See* NMSA 1978, § 40-3-8(B) (1990) (retaining property held as joint tenants or tenants in common as community property unless explicitly conveyed as otherwise); NMSA 1978, § 45-2-807(A) (2011) (preserving the ability to convey community property by will unless the property is held as joint tenants). Thus, as the district court found, when Mother died, Father retained his undivided half-interest in the Property, and Mother's share, according to the 2007 will, was to be divided equally between Children. The district court further properly determined that Father's estate was not entitled to receive the statutory allowances that may have been available when Mother died. *See* NMSA 1978, § 45-2-402 (1995) (family allowance); NMSA 1978, § 45-2-403 (2011) (personal property allowance); *In re Est. of Vigil*, 2012-NMCA-121, ¶ 12 ("[W]e conclude that our Legislature did not intend that statutory allowances unclaimed during the lifetime of the surviving spouse would then be transferred to the heirs of the surviving spouse."). Wife offers no other reasons to revisit the district court's calculations.

**{15}** Last, we conclude that Wife abandoned any arguments related to indispensable parties and the deficiency judgment before the district court. On appeal, Wife contends that (1) the district court's decision impacts the reverse mortgage and the lender was therefore an indispensable party; and (2) "Section 10 of the Adjustable Rate Second Deed of Trust" precludes any deficiency judgment. Although Wife initially raised these objections in the motion to reconsider the judgment, in reply, Wife withdrew these

arguments. Wife accordingly did not invoke a ruling by the district court on these issues, and they are therefore not preserved for our review. *See Morgan-Nauert*, 2012-NMCA-037, ¶ 28.

## IV.    The Partition Procedure

**{16}**    The partition of real property in the present case is governed by the Uniform Partition of Heirs Property Act, NMSA 1978, §§ 42-5A-1 to -13 (2017), and the Partition Act, NMSA 1978, §§ 42-5-1 to -9 (1897, as amended through 1965). *See* § 42-5A-3(B), (C) (providing that the Uniform Partition of Heirs Property Act applies to "heirs property," supplements the Partition Act, and replaces provisions of the Partition Act that "are inconsistent with the Uniform Partition of Heirs Property Act"). Generally, the district court is required to determine the value of the property, send notice of the value to the heirs, and provide for a waiting period in which parties may request buyout or sale of the property. *See* §§ 42-5A-6 to -7. The court may facilitate a buyout, *see* § 42-5A-7, or under certain circumstances, may order partition in kind, *see* § 42-5A-8(A); *see also* § 42-5A-2(G) (defining partition in kind as the division of the property "into physically distinct and separately titled parcels"). If buyout is not feasible, the district court may decline to order partition in kind if it "finds that partition in kind will result in manifest prejudice to the cotenants as a group." Section 42-5A-8(A). In those circumstances, partition by sale is permitted at the request of an heir. Section 42-5A-8(B). Wife argues that the district court did not follow the statutory procedure for partition—specifically, that the district court ordered partition by sale without determining value, providing notice of value, or observing the waiting period. Wife essentially demands strict compliance with the statutory procedures.

**{17}**    We conclude, however, that Wife waived the argument that the district court must strictly adhere to the statutory procedures. *See Gordon v. Gordon*, 2011-NMCA-044, ¶¶ 11-12, 149 N.M. 783, 255 P.3d 361 (applying the rule that "[t]o constitute a waiver, there must be an existing right, a knowledge of its existence, and an actual intention to relinquish it" (internal quotation marks and citation omitted)). According to Section 42-5A-6(G), after the district court holds a hearing to determine the property's value, "but before considering the merits of the partition action, the court shall determine the fair market value of the property and send notice to the parties of the value." Thus, the statute contemplates that the determination of value will happen before "the merits of the partition action." *Id.* Despite Daughter's pleadings explicitly seeking partition by sale of the Property and tentative discussion about the value of the Property at pretrial hearings, Wife did not seek a valuation from the district court until after the trial on the merits. As a result, we conclude that Wife waived the right to protest the district court's lack of strict adherence to the statutory procedures. *See Gordon*, 2011-NMCA-044, ¶¶ 9-12 (concluding that statutory protections were waived when no evidence suggested that the parties were unaware of their rights when they agreed to certain provisions); *see also Sims v. Sims*, 1996-NMSC-078, ¶ 42, 122 N.M. 618, 930 P.2d 153 ("Although, since the adoption of the code in this state, a statutory partition action is governed by the rules of pleading, practice, and evidence applicable to an ordinary civil

action, determinations under the statutory procedure are, nevertheless, governed by equitable principles." (internal quotation marks and citation omitted)).

## V.     Conflicting Conclusions of Law

**{18}**     Wife maintains that the district court's conclusions of law conflict. In Conclusions of Law Nos. 45 and 48, the district court determined that Wife was not liable to Mother's estate for fair rental value of the Property "because she made necessary repairs, paid taxes, and insurance, which compensates for her use." In later Conclusions of Law (Nos. 68 to 72), however, the district court determined that Wife was liable to Father's estate for the fair rental value from the date of his death, adjusted to exclude Wife's intestate interest and to subtract Wife's statutory spousal allowances. This liability was calculated based on the full rental value of the Property, without accommodating the district court's earlier finding that Wife did not owe Mother's estate rent at all—even though because of the peculiar circumstances, Mother's estate continued to have a half-interest in the Property after Father's death.

**{19}**     As a result, we agree with Wife that these conclusions appear to conflict, on the one hand relieving Wife entirely of an obligation to pay rent to Mother's estate, and on the other hand requiring Wife to pay rent to Father's estate based on the full rental value of the Property adjusted only for Wife's intestate interest and the statutory spousal allowance. To address this discrepancy between conclusions, we vacate Conclusions of Law Nos. 45, 48, 68, 69, 70, 71, and 72, and remand to the district court for reconsideration and to issue an amended judgment clarifying its conclusions of law on Wife's liability for the fair rental value of the Property.

## VI.     Attorney Fees

**{20}**     The district court found that Daughter's attorney fees and costs were to be paid "out of the estate proceeds" but also "[p]rovided that [Children] may look to [Wife] for reimbursement of some of their attorney[] fees and costs incurred herein to the extent practicable." Wife makes three arguments to support the contention that the district court improperly required her to pay Daughter's attorney fees: (1) the petition was brought against Father's estate and not Wife; (2) "the party bringing suit is not entitled to attorney fees"; and (3) Father's and Mother's estates should each be responsible for attorney fees if those fees were awarded under Section 42-5-8(C) (addressing the payment of attorney fees for a partition action). We review the award of attorney fees for abuse of discretion. *See Khalsa v. Puri*, 2015-NMCA-027, ¶ 74, 344 P.3d 1036.

**{21}**     The district court did not abuse its discretion in requiring Wife to pay Daughter's attorney fees. Wife's arguments focus on a lack of support for her personal liability to pay attorney fees, but Section 42-5-8(C) affords the district court with broad discretion to award attorney fees to a party as it deems "just and equitable."  The district court focused on Wife's actions as personal representative of Father's estate, finding that she "failed to administer the estate in a manner that was most beneficial to all the heirs of [Father's] estate." Having found that Wife was personally at fault for the failure to

adequately administer Father's estate, resulting in the present action, we cannot conclude that the district court abused its discretion in awarding attorney fees to Daughter. *See Khalsa*, 2015-NMCA-027, ¶ 74; *see also* NMSA 1978, § 45-3-808(B) (1975) ("A personal representative is individually liable for obligations arising from ownership or control of the estate . . . only if [they are] personally at fault.").

## VII.    Res Judicata

**{22}**    Wife contends that Daughter's petition for partition was precluded by an earlier creditor's claim that Daughter made against Mother's estate, which was dismissed in a separate proceeding. Daughter responds, and the district court agreed, that Wife "waived any reliance on the affirmative defenses of res judicata and disallowance" of the creditor's claim. It is well established that "[r]es judicata is an affirmative defense which must be raised or it is permanently waived" and that the defense must be raised "in either a responsive pleading or a motion to dismiss." *Fogelson v. Wallace*, 2017-NMCA-089, ¶ 19, 406 P.3d 1012 (alteration, internal quotation marks, and citations omitted). Because Wife did not raise res judicata until after trial when she submitted written closing arguments, she waived the affirmative defense. *Cf. id.* ¶ 22 (holding that "[a]n opening statement is not a permissible mechanism by which to raise an affirmative defense").

## CONCLUSION

**{23}**    We remand to the district court to clarify the rent owed by Wife and otherwise affirm.

**{24}    IT IS SO ORDERED.**

**KATHERINE A. WRAY, Judge**

**WE CONCUR:**

**JENNIFER L. ATTREP, Judge**

**SHAMMARA H. HENDERSON, Judge**